Good morning Your Honors, Robert Smith Schoen for the Appeal of Appellate Steve Tarbuck. We have these inquiries that deserve two minutes of your time. Neither I, nor Bob do we have enough time. Thank you Your Honor. If I could, I'd like to focus this morning on what I see as the threshold issue for the court reaching Mr. Tarbuck's free speech claim under Section 1883, which is whether he preserved that claim for appeal. As Your Honors know, the court started with the forciful rule and that was modified and abrogated somewhat in Lacey. In Hull, the court further modified the Lacey rule and held that when the district court provides instructions on how to modify the complaint, it's absolutely a voluntary dismissal if the plaintiff chooses to forego completing the complaint. You know, the Hull is a tricky case because it was a pro se plaintiff. There was one complaint when there was an amendment to the complaint and then the district court says, don't give me another complaint unless you do X. The person didn't come in with another complaint and our court focused on the fact that this is pro se. So, I'm not sure how far Hull goes. It's not so much what I'm feeling as to say I'm puzzled about how far Hull goes. I think Hull, to be honest Your Honor, I am too. I'm not sure. I'm not sure if it, you know, I think the court was trying to clean up the problems with the forciful rule in Lacey and I'm not sure even the Lacey rule gets us there, but it is possible. It's very possible. You're trying to say that treating it as voluntary when somebody's been dismissed without prejudice doesn't repeat it the second time around to say that as a matter of law, that we're using an amendment that strikes me as stupid. It may, however, be our law. It may be, Your Honor. It's true that that was a pro per. So, the court maybe accorded the appellant a little bit of deference there, but the district court did say these are the problems with the complaint. If you're going to repeat this, I want to see these issues fixed. Here, the district court issued a pretty succinct opinion saying these are the issues with the complaint. Now, it didn't use any magic words. The court didn't say don't repeat this. You're not going to do it the way I'm asking you to, but the court did outline the deficiencies of the complaint or what it perceived to be the deficiencies. I think any reasonable litigant or counsel is going to hopefully study the district court's Are you trying to argue? No, Your Honor. I was not. I think any counsel, though, would, in deciding whether to repeat that claim, not ignore the district court's opinion and its outline of the deficiencies of the complaint. Yeah, and if it's a counsel case, that's part of the district court. And you know the rule. The rule is dismiss all without prejudice. If you don't repeat it a second time around, that means that it's forfeited. Well, okay, it's forfeited because that's the rule. The rule is the rule, and you didn't repeat it. That sounds as though that's for voluntary approval, but I just think some people don't know the rules. Sir, I think we have to presume that counsel never will. It may also be that you have some kind of APM requirements for repeating it as part of the action. But you aren't that counsel, and I guess you have to expect me to agree with that. Well, and I think because Mr. Tarbon chose not to repeat that claim, for whatever reason, we have to assume he was the best in the complaint, or the best counsel that actually completed it. So I think it is the complaint he has to rest on here. Yeah, the district court's point of view is wrong. It could be that if he's going to be able to have money, that would not be a whole issue. Correct, and that's my point, Your Honors, is that if we get past that threshold issue, then I think the brief's still pretty much underdressing the actual merits of the district court's decision on the motion to dismiss. But the threshold issue is whether this new amendment gets them authority. I think that forcing them to repeat the claim, it forces the State of Nevada and the individual defendants to then file another motion to dismiss. Or it forces Mr. Tarbon to file some sort of election to inform the trial court that I'm repeating this, I'm not changing anything, but I want you to ignore it because I'm just preserving it for a few. That strikes me as something outside of the normal realm of some procedure. It seems to be a make-or-break rule. That's why I think if the way you pose it, I think that's probably true in the real world, in the trial world, the trial judge. This occurs, it occurs from time to time. The counsel will say, Judge, I can't do a better job. Dismiss it with prejudice. Let's see how it works out in the future. Or he could file a 1254B motion and ask the district court to certify it for appeal if he thinks it's got a meritorious value. But he didn't do any of that. True. He could have asked the district court to certify it for appeal, but I think the problem with that is that it asks him to seek an interlocutory review right away when ultimately, as cases proceed, the dismissal claims may not matter, the case may be settled, he may have banded it for some other reason. But why isn't it a tactical decision, the consequences of which he's stuck with? What you just outlined is a perfectly plausible scenario, but it's essentially an informed decision to take a risk that I think my other claims are stronger and I can prevail on them. Sure, but I think his choice was to either seek an interlocutory review, reap the acclaim that he couldn't plead any better than he already had, and ask the district court to dismiss it with prejudice, which creates more work for the litigants and the court, or rest on it and decide that it was not voluntarily dismissed, it was dismissed with some conditions one needs to amend, and seek an appellate review if that became necessary later on. I'm not a jurist. I'm just a lawyer. I can judge this differently. The way that we do, I completely have jurisdiction over it. Sure, Your Honor. I think the issue there is whether Mr. Tarbach complained about a protected activity under Title VII, and I think lawyer goes to that. Yeah, well, there's another possible problem, and this problem may go to a claim that may or may not be forfeited under free speech. Your Honor, he looks as though the decision-maker was not aware of his complaints. Have you responded to that? If the person who decided to terminate him might not have been aware of the complaints that he's provided, Your Honor. I believe in this case we don't have causation. Causation is in comparison to his speech as well as under Title VII. Right. But having looked at the record, I could not figure out from this record whether the administrator is the person who communicates the termination or whether that's the person who actually makes the decision. I believe the implication of his complaint was that Superintendent Olson was the one who actually made the decision. But I think Your Honor is correct that the record is not a gate-going. Who made the decision and who and what and when. But is it the earliest of your two? At least the ledge. Which of the two is the final decision-maker? Yes, Your Honor. You know, we'll see at the end of the day if anybody else wants to comment. Thank you, Your Honor. Thank you, Your Honor. Just a follow-up question if you can say anything to that. One of the less important questions about the reason for his refusal to move on to Title VII. I'm going to look at one question. So if he could decide a year or a time that would be a good time for him to move on to Title VII, would that be pro se, but also would that be for someone who, for example, doesn't communicate their federal card all the time? I put it this way, would force it, which involved dismissing his questions. So which involved pro se, but also involved, I think, the significant fact is that the trial judge made hostile comments suggesting he would not be welcome to a re-pledged claim. And C. Crest, which says a Big Forces case was involved, the procedural part of those three cases, which were Big Forces cases involved, is some sort of legal impediment to the plaintiff re-claiming. In those cases, it's unfair to require him to do something he can't do or else forfeit or ban the claim. It's not unfair to a plaintiff. You know, I didn't quite answer that question, but if I'm building on the position of drafting the rule, what's a clear rule that would have the least possibility of people pressing him about what I would say? Well, if you're dismissed and you have a chance to go ahead, you should assert your claim. In this case, it's not a total order because it was a complaint of all of the two pages. Or you could move the court to move him to, I'm sorry, tell parties to be aware they can move the court to change the dismissal without prejudice, but with prejudice. Stipulate with the other side that you're not going to file a new complaint, you're not going to have to answer it, but then you'll agree that we're going to stop here and observe it for a few more weeks. There's many things you can do, I think, to come to your conclusion on that. Well, thank you. Give me an opportunity to judge that. I'm not sure if the answer you just said was a tactical decision, but what was the tactical decision that you were going to make? Well, we can always suppose that the reason he didn't have sex is because he didn't have sex, which is what happens when you dismiss a claim. You can't do any better. You just do what you're supposed to do. Which I'm not excited about, because I think the logical conclusion comes back to what we did today to make a decision. I just want to make sure. And I'll be fine with that. Okay. And maybe get the court to dismiss it. It was prejudiced. It was just prejudiced. I couldn't have prejudiced the interview. I would only be speculating. Title VII says, No reason to jury confines Mr. Tarbox on the preponderance of the evidence. And there's a clear lack of evidence. After 10 months of discovery, he was to his own, whether he blew a whistle, whether or not the case pathologist focused on what seemed to be Mr. Tarbox's case, but what his strongest ground for appeal is, which was pretext. He concedes in his brief on page 13 that we had a legitimate non-retaliatory reason to take off probation. He was there for all of it. Well, I didn't think it was a legitimate reason. Remember, I read that on page 13, but I was too excited to read it on time. He didn't concede. It was a joke. No, he agreed that we had a legitimate non-retaliatory reason, in which case, the court called on Mr. Burton-Shitzkin to him, under the circuit's presence, to provide specific, credible evidence of pretext. So he has to show that our reason is a sham or a cover-up. The central unrebutted fact in this case is that he, and the decision to let him go, to take off probation, was made before he allegedly blew the whistle. Superintendent Olson testified that she was worried about his performance. It's February 27th. She gets a second review. It's a bad review. She decides to begin the termination proceeding. The personnel department says, All right, get together some key evidence to support it. That leads to what is the key document in this case. It's called the timeline. It's beginning in EOR 103, and it's 18 separate incidents, some of them involving the most serious, some of them involving safety to the youth, every single one of them occurring before he blew the whistle. This document itself prepared and dated before he blew the whistle. I don't know how he gets around it. His response is that it wasn't suspicious points to the evaluations. He says it was suspicious that I was getting three reviews, and all of a sudden I blew the whistle. He turned around and he thought of me. No, he wasn't getting three reviews. He had two reviews. He got a satisfactory evaluation in the way that a C-minus is a passing grade. By a subtraction, he got a satisfactory evaluation. But more important than that was that the evaluation is broken down into categories. There's one category in both reviews that he never got a satisfactory evaluation, and that was with respect to supervision of youth. And this was particularly problematic for Mr. Tarbo because his job is supervised youth. He was failing in his primary task. Not only that, in his first review, in his second review a few months later, he began failing in a second category, which was communication. The evaluation explained this was a critical thing that there had been incidents involving safety in areas where there are no exceptions allowed. And it didn't suit his supervisors. Furthermore, it indicated that he was responding to attempts at correction, taking them as personal attempts. So he was getting worse, unable to perform his job, and showing no promise of being able to fix it. It's all happened before he blew the whistle. That's the evaluations, and there's a wealth of evidence of his disruptiveness, his insubordination, and him being a problematic employee. So you have overwhelming evidence that this individual, again, there for 8 months, serious problems beginning, 6 months in, continuing almost weekly until the point he's let go. And on the other hand, he offers, yes, he presents as his proof of the sham of these evaluations, which, in fact, work against him. So as I can tell, they're very bad evaluations. Unless this court has any other questions. Okay. Any yours? Just to address Judge Fletcher's question on crafting a rule that doesn't set a trap, I think, where the district court doesn't put strictures or doesn't issue an opinion for which you can infer from strictures on what should be in the amended complaint, then the court can infer that omission of a claim in a subsequent complaint is a voluntary waiver. But that didn't happen here. Here, the court did outline what it perceived to be the deficiencies in the free speech claim, and Mr. Tarbin, for whatever reason, couldn't repeat that claim. Well, that version of the rule that you just proposed, I think, makes any dismissal of that prejudice to be viable. So you don't need to repeat it because it's going to be a very rare district judge to simply dismiss it from that kind of way so soon. Sure, there are instances, though, where a plaintiff, for example, asks for me to amend a complaint and to add a new claim and will omit all claims through the law. And there are clearly voluntary dismissals. Well, there were actually two sets of complaints. There was the formal complaint through NIEMS in March, but then, going back to August 2010, there were complaints that are referenced in NIEMS' commentary that's on page 70 of the record. Thank you, Your Honor. This is a motion to adjourn the argument. The case of the Tarbon v. Stephen Nevada is now submitted for decision.
judges: W. Fletcher, Tallman, Huck